Smith, P. J.
The action was brought by the plaintiff’s intestate, in his life-time, to restrain the defendants from constructing a dam across a stream known as “Reuben Brook,” in the village of Addison, and thereby turning the waters of said stream from its present channel on to the lands of the plaintiff. The defendants, three of whom were trustees of said village, and as such, commissioners of highways therein, and the others were the president and street commissioner of said village, claimed by their answer that in doing the acts complained of, they were restoring the stream to its original channel from which it was unlawfully diverted in or about the year 1847, by damming up its ancient course and causing it to flow on'and along a certain highway in said village, called South street, thereby obstructing said highway and creating a public nuisance, which it was the duty of the defendants, in their official capacity, to abate.
A question in the case is whether the alleged highway had a legal existence in 1847, at the time when the diversion is alleged to have occurred. That South street is now, and for many years has been a' public highway, is not disputed. .The question is, when and by what means it became a public highway. The referee found that the highway was laid out in 1834. That finding is challenged by the appellant, as being unsupported by the evidence. No order laying out the highway was proved. There was evidence tending to show that records of highways in the town of Addison, from the year 1795 to a date subsequent to the year 1863, had been made and deposited in the office of the clerk of the town. The town clerk produced a book of such records from the year 1795 to 1830, and another from ■ 1863 down, and he testified that he had searched in his office for the highway records for the intermediate period and could not find, them; and there was evidence tending to show that the book containing such records for that period was destroyed by fire in December, 1879. Secondary evidence of its contents was therefore admissible. Leland v. Cameron, 31 N. Y., 115.
It was proved by record evidence that in the year 1834, *767 the highway commissioners of the town were James H. Green, Andrew Helmer and Joseph Orr. Henry H. Birdsall, a witness called by the defendants, testified that he was a surveyor in 1834, and that when Green, Helmer and Orr were commissioners, they called on him to lay out a highway, commencing where the Addison House now is; that he made the survey, and was assisted by Helmer in doing it; that it ran near where Orr lived, and he saw Orr at the south end of the route while he was making the survey; that he made a survey bill and thinks he gave it to Helmer, but of that he is not certain; and the road was opened and worked on his survey, within a year or two, as near as he can recollect. We understand that the appellant does not question, but that South street is located upon the line of Birdsali’s survey. At the time of the survey, William Wombough owned a large tract of land, including the land through which the road was laid, and, according to the testimony of his son William, he sold village lots on that street, but witness could not say that he sold any prior to 1844.
Henry Baldwin testified that about the time of the war he was a trustee of the village of Addison; that a discussion arose in relation to South street, and that he looked up the record of a highway, which is the same street now used. It was in an old book of record. He testified to some portions of the description of the course of the highway contained in the record. The testimony above stated is not controverted. In view of all the circumstances, it seems to us to warrant the conclusion that South street was surveyed in 1834, under the direction of the highway commissioners, for the purpose of laying it out as a highway, and that at or about the same time it was recorded, opened and worked, and has ever since been used as a highway. The fact that there is no express evidence that the order laying it out was signed by the commissioners, does not militate against this conclusion. There is no evidence that it was not duly signed, and the fact that it was placed upon record, warrants the presumption, in the absence of pi’oof to the contrary, that it possessed all the requisites entitling it to be recorded.
The controversy is not between the public authorities and the owners of the soil taken for the street. If it were, it may be that presumption could not supply the lack of proof. Even then, however, the circumstance that Wombough, the owner of the soil, recognized the existence of the highway by selling lots upon it before the lapse of a sufficient time to create a highway by prescription, would be strong evidence that the highway was legally laid out. Indeed, it may be said that such action on the part of the *768 owner, accompanied by public uses, and the care of the street by the public authorities, amounted to a dedication and acceptance, independently of the question whether the proceedings to lay out the highway were in all respects regular and complete. Trustees of Watertown v. Cowen, 4 Paige, 510; Matter of Thirty-ninth Street, 1 Hill, 191.
As such dedication and acceptance were prior to the diversion of the stream, the finding that the highway then had a legal existence, may rest upon that ground.
Again, Wombough having dedicated the highway to the public, and the public having accepted it, he was thereby estopped from claiming the right to relieve any other portion of his land from the flow of the stream, by turning it on to the highway to the detriment of the public. The plaintiff is in the same position, and so was her intestate before her. Her lands which she claims are injured by the acts of the defendants, are a part of the tract owned by Wombough, and the title of her intestate and herself was derived from Wombough through mesne conveyances. We incline to the opinion that on this ground also the question of the existence of the highway at the time of the diversion was correctly decided, as between the parties to this action. But we advance this view of the case with some hesitation, as it has not been suggested by counsel, and for that reason we would not be willing to rest our decision of the question upon it alone.
Upon the question of diversion the testimony is voluminous and conflicting. We have read it carefully and are not ready to say that the conclusion of the learned referee is against the weight of evidence appearing in the appeal book. The case states that after the close of the evidence, and before the cause was submitted, the referee, with the consent of all parties, and in the presence of the counsel on both sides, made a personal examination and view of the premises and water courses in question. To what extent his conclusion was determined by such inspection we can not know, and, so far as it was determined thereby, we cannot review it.
That the diversion has resulted in a grave public nuisance can hardly be questioned. Neither the lapse of time, nor the circumstances under which the plaintiff’s intestate acquired his title, nor the attempts of the citizens and public officers of the village to procure a discontinuance of the nuisance without litigation, give the plaintiff a right to continue it against the public.
The judgment should be affirmed, with costs.
Barker and Haight, JJ., concur; Bradley, J., not sitting.